IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL MILO BOE,

    Plaintiff,                         No. CIV S-07-1286 DAD

    vs.

MICHAEL J. ASTRUE,                <u>ORDER</u>
Commissioner of Social Security,

    Defendant.
_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the court will affirm the decision of the Commissioner of Social Security (Commissioner).

**PROCEDURAL BACKGROUND**

        Plaintiff applied for Supplemental Security Income (SSI) under Title XVI on April 8, 2003, alleging disability since August 10, 1995 due to back, knee, and left wrist pain. (Transcript (Tr.) at 56-59, 91.) The application was denied initially on June 13, 2003 and upon reconsideration on September 17, 2003. (Tr. at 42-52.) Pursuant to a timely request made by plaintiff's attorney, a hearing was held before an administrative law judge (ALJ) on June 27, 2006. (Tr. at 14, 53-54, 336-85.) Plaintiff testified at the hearing. (Tr. at 339-72.)

1

In a decision dated September 28, 2006, the ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since April 8, 2003, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: residual effects of lumbar fusion surgery and knee and wrist strain (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work activity that does not involve frequent bending.
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on November 21, 1970 and was 32 years old on the date the application was filed, which is defined as a younger individual age 18-44 (20 CFR 416.963).
>
> 7. The claimant has a GED high school equivalent education and is able to communicate in English (20 CFR 416.964).
>
> 8. The claimant has an unskilled past relevant work background. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).
>
> 10. The claimant has not been under a "disability," as defined in the Social Security Act, since April 8, 2003 (20 CFR 416.920(g)), the date the application was filed.
>
> 11. The claimant's history of alcoholism or substance abuse is not a contributing factor material to the determination of disability.

(Tr. at 16-22.) On May 8, 2007, the Appeals Council denied plaintiff's request for administrative review of the ALJ's decision. (Tr. at 5-7, 9.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on June 29, 2007.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized in the Ninth Circuit as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In support of his motion for summary judgment, plaintiff makes three arguments: (1) the ALJ failed to develop the record with respect to plaintiff's mental impairment and failed to update the record with respect to plaintiff's physical impairments; (2) the ALJ rejected plaintiff's statements and those of a third-party witness regarding plaintiff's impairments and functional limitations, without stating clear and convincing reasons for doing so; and (3) the ALJ failed to show that plaintiff could perform substantial gainful work that exists in the national economy. Plaintiff's arguments are addressed below.

**I. Development of the Record**

The ALJ has a duty throughout the proceedings "to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). See also 20 C.F.R. §§ 416.912(e) & 416.1444. Rather than proceeding as a "mere umpire" at the administrative hearing, the ALJ has an independent duty to fully

develop the record. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). See De Lorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (the ALJ's duty to develop the record is present even if the claimant is represented by counsel, and the duty is especially important in cases of mental impairments); Brown, 713 F.2d at 443 (where the ALJ feels that more evidence, or more reliable evidence, is necessary, the ALJ has a duty to fully and fairly develop the record, even when the claimant is represented by counsel). However, the ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

In the present case, the ALJ determined at step two of the sequential evaluation process that plaintiff's severe impairments are (1) residual effects of lumbar fusion surgery and (2) knee and wrist strain. (Tr. at 16.) The ALJ noted other impairments, including long term smoking, obesity, asthma, and a mental impairment, but determined that those impairments were not severe because they did not significantly limit plaintiff's physical or mental ability to perform basic work activities. (Tr. at 17.)

With respect to the mental impairment, the ALJ found that plaintiff "reported a vague and varied history of depression and possible Post-Traumatic Stress Disorder (PTSD)" arising from the murder of his brother when plaintiff was a teenager. (Id., citing Ex. 15F [tr. at 320-33].) The exhibit cited by the ALJ includes an evaluation dated July 13, 2005, in which Debra Lupeika, M.D., described plaintiff's medical history as he reported it, including a history of depression and possibly post-traumatic stress disorder. (Tr. at 330.) Plaintiff stated that he had been suicidal and psychotic in the past but not for quite some time, had taken Paxil or Prozac for six months, gets "paranoid, agitated, and irritated," and has anger issues. (Id.) Dr. Lupeika found him "positive for anxiety" but cooperative, pleasant, and in no apparent distress. (Id. at 331-32.) She assessed depression and PTSD, as well as physical medical problems, and referred plaintiff for counseling and psychiatric care. (Id. at 332-33.)

/////

The ALJ evaluated plaintiff's mental impairment in accordance with the technique described in 20 C.F.R. § 416.920, which requires consideration of four broad functional areas. The ALJ found that Dr. Lupeika's July 13, 2005 report and plaintiff's April 3, 2003 personal data questionnaire establish only mild limitations in plaintiff's activities of daily living and in his social functioning. (Tr. at 17, citing Exs. 5E [tr. at 108-12] & 15F [tr. at 330-33].) The ALJ also found that plaintiff's April 3, 2003 disability report establishes only mild limitations in concentration, persistence, and pace, demonstrating that plaintiff has the ability to sustain focused attention for a sufficient period to permit timely completion of tasks commonly found in a work like setting. (Tr. at 18, citing Ex. 3E [tr. at 90-99].) The ALJ found no evidence of repeated or extended episodes of decompensation or deterioration related to plaintiff's mental impairment. (Tr. at 18.) On the basis of these findings, the ALJ concluded that plaintiff's emotional problems do not significantly limit his ability to understand, remember and carry out simple instructions, respond appropriately to supervision, coworkers, and usual work situations, or deal with changes in routine work settings. The ALJ acknowledged that plaintiff experiences mild symptoms of depression from time to time, but he observed that plaintiff had only recently sought formal counseling sessions for depression secondary to medical problems. (Tr. at 18.)

Plaintiff's motion for summary judgment includes a twenty-one page summary of his medical treatment, but there appear to be only five medical records relevant to plaintiff's mental impairment – four treatment records from 2000 and 2001, and Dr. Lupeika's evaluation completed in 2005. In May 2000, plaintiff was seen by Suzanne Lockwood, APRN, for help with obsessive thoughts and paranoia arising from jealousy. He complained that he and his wife were constantly fighting. He claimed a family history of mental illness consisting of depression and alcoholism but reported that he had never been on any psychiatric medications. The doctor found no evidence of psychotic or bipolar symptoms, hallucinations, or delusions but thought plaintiff "did look depressed" and prescribed two non-addictive medications. (Tr. at 147.) In June 2000, when plaintiff was seen for follow-up, he decided to focus on staying sober. (Tr. at

146.) Plaintiff was seen in March 2001 for muscle spasms and a panic attack, and in May 2001 he was seen for muscle spasms, back pain, anxiety/depression, and alcohol abuse. (Tr. at 232, 228.) In 2005, he was seen by Dr. Lupeika, as described supra.

In addition to these five medical records, plaintiff points to his April 3, 2003 personal data questionnaire, in which he stated that his ability to think and concentrate had decreased due to depression arising from his inability to work and support his family, and the Social Security interviewer's note on April 8, 2003, indicating that plaintiff did not understand a few of the questions and she had to change the questions "to a lower level." (Tr. at 110, 114.) Plaintiff also cites his testimony at the administrative hearing about seeing a therapist in 2006. Therein, he described the general topic of discussion during his therapy sessions as his children and his fight for custody of them. (Tr. at 367.) In response to his attorney's question about how his ability to function is affected by his feelings and seeing a therapist, plaintiff testified that he is able to put his feelings aside and go on with what he has to do but that it seems to help to be able to talk about his job and the things that bother him. (Tr. at 368.)

At the end of the hearing, the ALJ left the record open for 15 days for submission of the treatment records with respect to plaintiff's recent therapy. (Tr. at 339, 385.) Counsel submitted records from Redding Rancheria Indian Health Clinic for the period from July 13, 2005 through June 9, 2006, which includes Dr. Lupeika's evaluation and two records from St. Joseph Hospital for the period from May 29, 2006 through June 9, 2006. (Tr. at 320-33, 334-35.)

The record does not appear to contain ambiguous evidence regarding plaintiff's mental impairment, and the ALJ did not find the record inadequate with regard to the effects of the mental impairment on plaintiff's ability to perform basic work activities. In the absence of ambiguous evidence or a record inadequate to allow for proper evaluation of the evidence, the ALJ was not required to develop the record further on this issue. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ambiguous evidence or the ALJ's own finding that the record is inadequate to allow proper evaluation of the evidence triggers the ALJ's duty to conduct an

appropriate inquiry); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding that the ALJ satisfied his duty by keeping the record open so that it could be supplemented by the physician's response to further inquiry into the basis for his opinion).

Plaintiff has also argued that the ALJ failed to update the record with respect to plaintiff's physical impairments. This argument is based in part on the ALJ's observation that "the record is largely devoid of medical opinion as to functionality with no residual analysis by treating physicians." (Tr. at 21.) Plaintiff argues that the ALJ should have obtained an updated physical examination instead of relying on a consultative opinion that was three years old at the time of the hearing, particularly in light of plaintiff's testimony that the consultative examination was perfunctory in nature.

The ALJ accorded significant weight to the September 4, 2003 opinion of Mark A. Ward, D.O., because he found it to be consistent with the record and well supported by objective findings. (Tr. at 21.) Based on clinical and radiological findings, Dr. Ward opined that, if applying the guides to evaluation of permanent impairment for intervertebral disc or other soft tissue lesions, plaintiff would be found subject to no more than a 10% whole person impairment. (Tr. at 264.) Plaintiff's recollection almost three years after the examination was that it lasted about five minutes, "if that." He testified that the doctor did not have him undress and did not touch his back but admitted that the doctor did have him bend over and touch his toes and walk back and forth and also checked his reflexes. (Tr. at 372.) It is evident, however, that the examination in question lasted longer than five minutes. The report notes plaintiff's account of his back, knee, and wrist pain and reflects that the doctor examined plaintiff's back and lower extremities as well as conducting a sensory examination. The doctor made extensive observations about the range of motion in plaintiff's back, extremities, wrists, and knees; plaintiff's ability to bend and extend; plaintiff's ability to stand on toes and heels; plaintiff's gait and station; plaintiff's ability to sit on a low step; plaintiff's ability to cross his arms across his
/////

chest; plaintiff's ability to stand up; plaintiff's grip strength; and plaintiff's fine and gross fingering. (Id.)

The record does not appear to be ambiguous with regard to plaintiff's physical impairments, and the ALJ did not find the record inadequate for purposes of evaluating the effects of those impairments on plaintiff's ability to perform basic work activities. In the absence of ambiguous evidence or a record inadequate to allow for proper evaluation of the evidence, the ALJ was not required to develop the record further by obtaining a second consultative examination.

Plaintiff's argument regarding the ALJ's asserted failure to develop the record is unpersuasive as to plaintiff's mental and physical impairments. The court finds that plaintiff is not entitled to summary judgment on this ground.

## II. Plaintiff's Statements and the Statements of the Third-Party Witness

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). See also Morgan, 169 F.3d at 599; Reddick, 157 F.3d at 722; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller, 770 F.2d at 848).

In evaluating a claimant's subjective testimony regarding pain and the severity of his symptoms, the ALJ may consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1285. The ALJ may also rely in part on his or her own observations.
/////

Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). However, the ALJ cannot substitute such observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. The determination of credibility is a function of the ALJ acting on behalf of the Commissioner. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). As a general rule, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. Morgan, 169 F.3d at 599.

The testimony of lay witnesses, including family members, about their own observations regarding the claimant's impairments must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Clearly, family members who see the claimant on a daily basis are competent to testify as to their observations. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to that particular witness. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919. It is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges pain or other symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities. 20 C.F.R. § 404.1513(e)(2); Social Security Ruling (SSR) 88-13.

Here, plaintiff argues that the ALJ failed to credit his subjective statements about his impairments and the functional limitations associated with those impairments. Plaintiff cites his testimony that his low back pain varies depending on his activity level but is constant, the

pain in his buttocks and one leg continues although it is not as bad as it was before surgery, his leg sometimes hurts all the way down to his foot, his toes and hands sometimes get numb, his knees hurt, especially when the weather is damp, one knee buckles, and he cannot rotate his left wrist. Plaintiff testified that he was working 20 to 25 hours per week as a dishwasher but was having difficulty keeping up with the job, which requires heavy lifting. Plaintiff testified that he can sit for half an hour before having to get up and move around for ten minutes before he sits down again. (Tr. at 348, 351-54, 361-62.)

The ALJ found that plaintiff could be expected to experience the pain he described but found "no evidence to support his self described limitations on standing and sitting." (Tr. at 20.) He found plaintiff "partially, but not fully credible on the severity of the pain claimed or on the limitations he described." (Id.) The ALJ noted that plaintiff was working part time almost at the level of substantial gainful activity in a job in which prolonged standing is required. (Id.) It appears that the only testimony rejected by the ALJ was plaintiff's testimony about the amount of time he could stand and sit. The ALJ found that testimony to be in conflict with plaintiff's own testimony about the work he was doing. The ALJ was entitled to resolve such a conflict in the evidence, and he did so by considering the medical evidence, including Dr. Ward's opinion. Considering all of plaintiff's symptoms to the extent that they were reasonably consistent with the medical evidence, the ALJ determined that plaintiff could not perform any of his prior relevant work, which included cashier, casino change runner and slot attendant, dishwasher, motel maintenance worker, meat plant worker, and nursing home assistant but determined that plaintiff could perform light work activity that does not involve frequent bending. (Tr. at 20-21.) The court finds that the ALJ's decision regarding plaintiff's testimony is supported by substantial evidence in the record.

Plaintiff has also argued that the ALJ did not seriously consider the statements of his third-party witness regarding his impairments and functional limitations. Specifically, plaintiff alleges that the ALJ failed to summarize the testimony of Tonia Allenger accurately and

failed to acknowledge that she is a substance abuse counselor as well as plaintiff's girlfriend. Ms. Allenger stated her belief that plaintiff's pain had increased since he started the part time job because it seemed to her that his trips to the doctor and the emergency room had increased. She testified that she could feel muscle spasms in the middle of his back when she gave him massages, that she mostly saw him reclining or sitting rather than standing, that he could sit in a car for 30 to 45 minutes at a time and at home for 30 minutes or so, that they went out to dinner occasionally, that he did some chores but she did the mopping and vacuum cleaning, and that she had observed him having trouble gripping small objects, although he could grip larger objects. She opined that he could not lift or carry more than 20 to 24 pounds very far. (Tr. at 373-84.)

   The ALJ rejected Ms. Allenger's testimony regarding poor grip as not supported by any medical evidence. He noted that plaintiff has a deformity of the left wrist but found no evidence supporting any restriction on handling or manipulation. (Tr. at 20.) Indeed, the ALJ had specifically noted Dr. Ward's finding that plaintiff's grip strength was excellent and that plaintiff was able to do fine and gross fingering without difficulty. (Tr. at 18.) The ALJ was silent as to the remainder of Ms. Allenger's testimony, and plaintiff takes that silence as a failure to credit her corroborating testimony. In fact, it appears to the court that the ALJ credited Ms. Allenger's testimony to the extent that it was consistent with plaintiff's testimony and not inconsistent with the medical evidence of record. To the extent that the ALJ rejected part of Ms. Allenger's testimony regarding the limiting effects of plaintiff's symptoms, it appears that the ALJ's finding of inconsistency with the medical evidence was a germane reason for discrediting that testimony. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

   The court finds that the ALJ's treatment of the statements of plaintiff and his witness is supported by substantial evidence in the record and the application of proper legal standards. The court finds that plaintiff is not entitled to summary judgment on this claim.

/////

/////

### III. <u>Ability to Perform Substantial Gainful Work</u>

Plaintiff's final argument is that the ALJ failed to show that plaintiff can perform substantial gainful work that exists in the national economy. As presented, the argument has two parts. First, plaintiff contends that the ALJ failed to properly assess plaintiff's residual functional capacity (RFC). Second, plaintiff contends that the ALJ erred in utilizing the grids despite the presence of extensive non-exertional impairments and functional limitations. Both contentions are grounded in part on the arguments already addressed above and are therefore unpersuasive in part due to the court's findings rejecting those arguments.

With regard to plaintiff's attack on the ALJ's RFC assessment, the court begins by noting that a claimant's RFC is the most that he can still do despite his limitations and is to be assessed based on all the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1); <u>Mayes</u>, 276 F.3d at 460. It is the ALJ's duty to determine RFC at the administrative hearing stage. <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001). However, it is the claimant who bears the burden of proof of establishing his or her RFC. <u>Yuckert</u>, 482 U.S. at 146 n.5.

Plaintiff's argument regarding RFC is grounded on his claim that the ALJ failed to develop the record, failed to credit plaintiff's own testimony, and failed to credit Ms. Allenger's testimony, together with conclusory contentions that the ALJ failed to consider all of the medical evidence regarding plaintiff's functional limitations and failed to consider the combined impact of his impairments. The court has already determined that the ALJ did not fail to develop the record, did not improperly reject plaintiff's subjective symptom testimony, and did not improperly reject the testimony of plaintiff's witness. Plaintiff's broad allegations of failure to consider all of the medical evidence and consider the combined impact of his impairments are unsupported and unpersuasive. The court finds that the ALJ properly determined plaintiff's RFC based on all of the relevant medical evidence in the record.

/////

1         With regard to plaintiff's attack on the ALJ's use of the grids, the court notes that the Commissioner may satisfy his burden of showing that the claimant can perform other types of work in the national economy, given his age, education, and work experience, either (1) by applying the Medical-Vocational Guidelines, commonly referred to as the "grids," under appropriate circumstances, or (2) by taking the testimony of a vocational expert. Burkhart, 856 F.2d at 1340 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988)); Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988).

        "The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." Burkhart, 856 F.2d at 1340. The grids reflect "major functional and vocational patterns" and incorporate the analysis of critical vocational factors, i.e., age, education, and work experience, in combination with the individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). The grids may be utilized when they "'accurately and completely describe the claimant's abilities and limitations.'" Burkhart, 856 F.2d at 1340 (quoting Jones, 760 F.2d at 998). See also Reddick, 157 F.3d at 729. "When a claimant's nonexertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. . . . In such instances, the Secretary must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities." Burkhart, 856 F.2d at 1340 (quoting Desrosiers, 846 F.2d at 578, and citing Jones, 760 F.2d at 998). See also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983); Tackett, 180 F.3d at 1101-02.

        Here, the ALJ determined that plaintiff has the RFC to perform substantially all of the exertional demands of work at the light level of exertion. The ALJ applied Medical-Vocational Rule 202.20 and found plaintiff not disabled. This rule applies to claimants whose RFC is limited to light work as a result of severe medically determinable impairments. It directs a decision of not disabled for a claimant like plaintiff, i.e., a younger individual whose education is high school graduate or more and whose previous work experience is unskilled.

Approximately 1,600 separate sedentary and light unskilled occupations, each representing numerous jobs in the national economy, are encompassed by the rule. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(a). All of the jobs can be performed after a short demonstration or within 30 days and do not require special skills or experience. Id. "The functional capacity to perform a wide or full range of light work represents substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs and, thus, generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competences for unskilled work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(b).

In this case, the ALJ properly applied Rule 202.20 to find plaintiff not disabled because the ALJ had determined that plaintiff's physical impairments, including the pain related to those impairments, manifest themselves in exertional limitations. The court has found that the ALJ did not err in determining that plaintiff's mental impairment does not significantly limit his ability to engage in basic work activities, and plaintiff has not demonstrated that he suffers from other nonexertional impairments that significantly limit his ability to do basic work activities. In the absence of other nonexertional limitations sufficiently severe to significantly limit the range of work permitted by plaintiff's exertional limitations, the grids accurately and completely described plaintiff's abilities and limitations and the ALJ was not required to take the testimony of a vocational expert.

The court finds that plaintiff is not entitled to summary judgment on his claim that the ALJ failed to show that he can perform substantial gainful work in the national economy.

**CONCLUSION**

The court's scope of review in considering decisions granting or denying Social Security benefits is limited. Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979) ("Congress has mandated a very limited scope of judicial review of the Secretary's decisions granting or denying Social Security disability benefits.") It is not the court's role to re-

weigh the evidence or substitute its own judgment for the Commissioner's. Winans v. Bowen, 853 F.2d 643, 644-45 (9th Cir. 1987). If there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ may resolve a conflict among experts so long as there is "more than one rational interpretation of the evidence." Sprague, 812 F.2d at 1230. See also Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision").

The record in this case contains some evidence of disability. However, there is substantial evidence of nondisability. The ALJ considered all of the evidence and set forth a rational interpretation of that evidence. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."). The ALJ properly discharged his responsibilities of determining credibility and resolving any conflicts or ambiguities in the testimony. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's January 14, 2008 motion for summary judgment (Doc. No. 20) is denied;

2. Defendant's February 13, 2008 cross-motion for summary judgment (Doc. No. 21) is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: April 30, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/boe1286.order